IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ELIZABETH WALKER,                                    No. 3:15-cv-01239-HZ

               Plaintiff,                    OPINION & ORDER

    v.

COMMISSIONER SOCIAL
SECURITY ADMINISTRATION,

             Defendant.

Robyn M. Rebers
Robyn M. Rebers, LLC
P.O. Box 3530
Wilsonville, OR 97070

       Attorney for Plaintiff

Billy J. Williams
United States Attorney
Janice E. Hebert
Assistant United States Attorney
U.S. Attorney's Office, District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Sarah Moum
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Elizabeth Walker brings this action for judicial review of the Commissioner's

final decision denying her application for Supplemental Security Income (SSI) under Title XVI

of the Social Security Act and Disability Insurance Benefits (DIB) under Title II of the Social

Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. §

1382(c) (3)). The Court reverses the Commissioner's decision and remands for further

proceedings.

**PROCEDURAL BACKGROUND**

      Plaintiff applied for SSI and DIB on February 23, 2012. Tr. 195, 202.[1] In both

applications, Plaintiff alleged disability beginning December 15, 2011. Id. Her applications were

denied initially and on reconsideration. Tr. 138-46, 150-56. On January 23, 2014, Plaintiff

appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 31. On

February 27, 2014, the ALJ found Plaintiff not disabled. Tr. 22. The Appeals Council denied

review. Tr. 1.

**FACTUAL BACKGROUND**

      Plaintiff alleges disability based on bipolar disorder, post-traumatic stress disorder

(PTSD), generalized anxiety disorder, chronic pain, lasting effects from history of thyroid

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9.

cancer, and fibromyalgia. Tr. 230-59. Plaintiff was forty-four years old at the time of the

administrative hearing. Tr. 20. She completed the tenth grade and has additional training in

medical billing, CPR, and phlebtobomy, obtained during her past work as a certified nursing

assistant. Tr. 231.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which . . . has lasted or can be

expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated according to a five-step procedure. See, e.g., Valentine v.

Comm'r, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving

disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S.

137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner

determines whether the claimant has a "medically severe impairment or combination of

impairments." Yuckert, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not,

the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one

of a number of listed impairments that the [Commissioner] acknowledges are so severe as to

preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d),

416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner

proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 15, 2011. Tr. 11. Next, at steps two and three, the ALJ determined that Plaintiff has the severe impairments of "bipolar disorder/depression, anxiety/posttraumatic stress disorder, thyroid cancer, right shoulder pain, and marijuana abuse," but that the impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments. Tr. 11-12. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b) and § 416.967(b) except that Plaintiff is limited to simple, repetitive tasks consistent with unskilled work; she must avoid extremes of temperature; she is limited to incidental contact with the public and no working with coworkers as part of a team; and she can occasionally reach and lift with the right upper extremity. Tr. 14. With this residual functional capacity, the ALJ determined that Plaintiff is unable to perform any of her past relevant work. Tr. 20. At step five, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the economy, such as small

products assembler and price marker. Tr. 20-21. Thus, the ALJ found that Plaintiff was not disabled. Tr. 21.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Id.; see also Batson, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff contends that the ALJ erred by (1) failing to properly assess the medical opinions of record; (2) failing to provide clear and convincing reasons to support his credibility

determination; and (3) failing to craft a residual functional capacity that includes all of Plaintiff's supported functional limitations.

I.    Medical opinions

Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. Id.; 20 C.F.R. §§ 1527(c)(1)-(2), 416.927(c)(1)-(2).

If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Holohan, 246 F.3d at 1202. If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion under the factors provided for in 20 C.F.R. §§ 1527(d)(2), 416.927(d)(2); Orn, 495 F.3d at 631. "To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).

a.   Michael Robinson, M.D.

As Plaintiff's treating physician, Dr. Robinson managed Plaintiff's mental health medication and conducted a psychiatric evaluation. Tr. 710-21, 729, 750-52. On October 14,

2013, Dr. Robinson evaluated Plaintiff for a behavioral health adult assessment. Tr. 710. On October 21 and November 8, 2013, Dr. Robinson consulted with Plaintiff to manage her medications. Tr. 751-52.

On January 9, 2014, Dr. Robinson conducted a functional assessment of Plaintiff's work-related mental activities. Tr. 779. Generally, he noted no limitations or only moderate limitations in Plaintiff's abilities. However, he found moderately severe to severe limitations in Plaintiff's ability to do the following: maintain attention and concentration for extended periods of time; maintain regular attendance; be punctual within customary tolerances; complete a normal workday or workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and travel in unfamiliar places or use public transportation. Tr. 780.  Dr. Robinson explained his conclusions by stating: "Mood disorder symptoms interfere with work performance." Id. When prompted to identify the clinical signs and symptoms that provide the basis for his ratings, Dr. Robinson wrote the following: "Mood swings, uncontrollable crying episodes, impaired concentration, low energy, fatigue, insomnia." Id.

The ALJ gave "little weight" to Dr. Robinson's assessment because (1) no objective testing was conducted, (2) the opinion evidence references mostly subjective complaints, (3) the limitations are inconsistent with the claimant's daily activities; and (4) the record does not indicate a treating relationship with Plaintiff. Defendant concedes that the ALJ was incorrect in stating that Dr. Robinson was not a treating physician. However, Defendant contends that this error was harmless because the ALJ identified three other valid reasons for discounting Dr. Robinson's opinion. See 20 C.F.R. § 404.1527(b)(i) (listing treatment relationship as one among several factors to consider in deciding the weight to give a medical opinion).

Plaintiff contends that the ALJ erred by not addressing objective testing in the form of "mental status exams" which supported Dr. Robinson's opinion. While the record only contains one such assessment conducted by Dr. Robinson[2], Plaintiff is correct that the ALJ erred in failing to acknowledge the assessment.

As an initial matter, the Court declines to hold whether or not Dr. Robinson's "mental status exam" is "objective testing." The ALJ does not define "objective testing," nor does he explain why Dr. Robinson's exam does not qualify. Furthermore, Defendant does not challenge Plaintiff's characterization of the exam as "objective testing." Instead, Defendant argues that the assessment findings do not support Dr. Robinson's opinion. While this may be true, the ALJ erred by incorrectly stating that no such assessment existed. This Court cannot affirm a decision by an ALJ based on a *post hoc* rationalization of the ALJ's decision. See Bray, 554 F.3d at 1225 ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ-not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.") (citations omitted). See also Chenery Corp., 332 U.S. at 196 ("[I]n dealing with a determination or judgment which an administrative agency alone is authorized to make, [courts] must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."). Even if Defendant has accurately captured the ALJ's line of reasoning, it is the ALJ that must explain his decision, not this Court.

In addition, substantial evidence does not support the ALJ's decision to discount Dr. Robinson's opinion because it "references mostly subjective complaints." Tr. 19. In addition to

---

[2] Plaintiff cites two other mental status exams conducted by providers at the same clinic as Dr. Robinson. Pl.'s Br. 10, ECF 11 (citing Tr. 724, 759). However, the issue is whether the ALJ erred in finding that Dr. Robinson himself did not conduct any objective testing.

ignoring the mental status exam, the ALJ does not point to any specific subjective complaints.

As the Ninth Circuit has explained:

> To say that medical opinions are not supported by sufficient objective findings . . . does not achieve the level of specificity our prior cases have required[.] The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

Finally, the ALJ found that the limits assessed by Dr. Robinson in his functional mental assessment were "inconsistent with Plaintiff's daily activities, listed above [in the ALJ opinion]." Tr. 19. Again, the ALJ does not point to any specific daily activities or limits which conflict with each other. Given the lack of specificity, the Court finds that the ALJ fails to identify specific and legitimate reasons, supported by substantial evidence, to discount Dr. Robinson's opinion.

b.   Daniel Scharf, Ph.D.

Dr. Scharf is an examining physician who conducted a psychodiagnostic examination of Plaintiff on September 16, 2010, at the request of Disability Determination Services (DDS). Id. at 474-79. The examination consisted of a diagnostic interview, mental status examination, and review of records provided by DDS. Id. at 474.

Dr. Scharf opined that Plaintiff presented consistently as a person with Bipolar II Disorder and PTSD, and that these two conditions exacerbate each other. Id. at 479. As to Plaintiff's abilities and limitations, Dr. Scharf wrote:

> Today, she demonstrated an ability to understand and remember short and simple instructions although likely will have difficulties with more complex instruction. She showed some mild difficulties sustaining concentration and attention today and would have difficulties with persistence. She would have difficulties engaging in appropriate social interaction due to her tearfulness and also was reporting moderate difficulties with anger within relationships.

Id. at 479.

The ALJ assigned "some weight" to Dr. Scharf's opinion. Id. at 18. The ALJ found that objective testing supported Dr. Scharf's assessment that Plaintiff could complete at least simple instructions at work. Id. However, the ALJ found that Dr. Scharf's other findings were "primarily based on [Plaintiff's] subjective complaints." Id. In addition, the ALJ discounted Dr. Scharf's findings because evidence in the record showed that Plaintiff interacted well with other medical providers and was able to work as recently as 2010. Id. Plaintiff argues that the ALJ erroneously discounted Dr. Scharf's opinion and that the error is harmful because Dr. Scharf's opinion supports additional social and persistence restrictions.

To the extent that the ALJ discounted Dr. Scharf's findings because they were based on Plaintiff's subjective complaints, this Court's assessment of the ALJ's findings hinges upon whether the ALJ properly discounted Plaintiff's credibility. As discussed below, the Court is unable to determine, after rejecting several of the reasons cited in the ALJ's credibility determination, whether or not the ALJ's credibility finding was proper. As part of this Court's remand order, the Court will require the ALJ to perform the credibility assessment again. Accordingly, the result of such a determination will affect the weight given to Dr. Scharf's opinion. The Court also notes for the ALJ's consideration on remand that Dr. Scharf's opinion was based not only on Plaintiff's reports but also on a diagnostic interview, mental status examination, and review of DDS records. See Ghanim v. Colvin, 763 F.3d 1154, 1162-63 (9th Cir. 2014) (ALJ erred in concluding that providers' opinions were based largely on claimant's self-reports when there was evidence in the record of the providers' observations, diagnoses, and prescriptions, in addition to the reports).

As to evidence in the record showing that Plaintiff interacted well with other medical providers, the ALJ does not cite to any specific provider or any specific interaction. The Ninth

Circuit has made clear that courts may not take a general finding—an unspecified conflict between Dr. Scharf's opinion about Plaintiff's ability to engage in social interactions and evidence regarding her interaction with medical providers—and comb the administrative record to find specific conflicts. Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) ("General findings are insufficient.").

Finally, while the ALJ states that Plaintiff worked as recently as 2010, he does not explain how this fact undermines any of Dr. Scharf's conclusions. As discussed below, Plaintiff's work history from 2008 forward is spotty and does not form the basis for contradicting an opinion about Plaintiff's ability to work.

In sum, the ALJ erred in discounting Dr. Scharf's opinion based on Plaintiff's work history and interaction with medical providers. Whether or not the ALJ properly discounted Dr. Scharf's opinion because it was based on Plaintiff's subjective complaints will depend upon whether Plaintiff is found credible on remand.

c.    Sandra Lundblad, Psy.D.

Dr. Lundblad completed a psychological assessment of Plaintiff in November of 2010, in connection with a prior disability claim. Tr. 68. Dr. Lundblad reviewed Plaintiff's medical records and concluded that she had mild restriction in her activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Id. Within Plaintiff's social functioning limitations, Dr. Lundblad found that Plaintiff was moderately limited in her ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. Tr. 70-

71. The ALJ assigned "little weight" to Dr. Lundblad's assessment because it was performed before Plaintiff's alleged onset date.

Social Security regulations state that the Agency will assess a claimant's residual functional capacity "based on all of the relevant medical and other evidence" in the record. 20 C.F.R. § 416.945(a)(3). The Agency's assessment of mental impairments involves a "complex and highly individualized process that requires [the Agency] to consider multiple issues and all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation," including "all relevant and available clinical signs and laboratory findings, the effects of [the claimant's] symptoms, and how [the claimant's] functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." 20 C.F.R. § 404.1520a(c)(1); see also Kimmins v. Colvin, No. 12-CV-4206-YGR, 2013 WL 5513179, at *7 (N.D. Cal. Oct. 4, 2013).

Medical records from years prior to the current alleged onset date are relevant to the longitudinal picture of Plaintiff's mental impairments that the regulations required the ALJ to develop in this case. 20 C.F.R. § 404.1520a(c)(1); see also Kimmins, 2013 WL 5513179 at *9 ("the regulations explicitly require that the ALJ consider 'all relevant evidence to obtain a longitudinal picture of [a claimant's] overall degree of functional limitation' for mental impairments."). This is especially true for Dr. Lundblad's assessment, which was performed only one year before the alleged onset date.  Accordingly, the ALJ erred when he disregarded Dr. Lundblad's assessment for no reason other than its date.

II.    Credibility determination

The ALJ is responsible for determining credibility. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). Once a claimant shows an underlying impairment and a causal relationship

between the impairment and some level of symptoms, clear and convincing reasons are needed

to reject a claimant's testimony if there is no evidence of malingering. Carmickle v. Comm'r, 533

F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering,

"where the record includes objective medical evidence establishing that the claimant suffers from

an impairment that could reasonably produce the symptoms of which he complains, an adverse

credibility finding must be based on 'clear and convincing reasons'"); see also Molina v. Astrue,

674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ engages in two-step analysis to determine credibility:

First, the ALJ determines whether there is "objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other symptoms alleged";

and second, if the claimant has presented such evidence, and there is no evidence of malingering,

then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's

testimony about the severity of the symptoms.") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations,

the ALJ may properly consider several factors, including the plaintiff's daily activities,

inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and

relevant character evidence. Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may

also consider the ability to perform household chores, the lack of any side effects from

prescribed medications, and the unexplained absence of treatment for excessive pain. Id.

As the Ninth Circuit explained in Molina;

> In evaluating the claimant's testimony, the ALJ may use ordinary techniques of
> credibility evaluation. For instance, the ALJ may consider inconsistencies either
> in the claimant's testimony or between the testimony and the claimant's conduct,
> unexplained or inadequately explained failure to seek treatment or to follow a
> prescribed course of treatment, and whether the claimant engages in daily
> activities inconsistent with the alleged symptoms[.] While a claimant need not
> vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit
> a claimant's testimony when the claimant reports participation in everyday

> activities indicating capacities that are transferable to a work setting[.] Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

Molina, 674 F.3d at 1112-13 (citations and internal quotation marks omitted).

The ALJ summarized Plaintiff's allegations of her limitations. Tr. 14. Plaintiff's thoughts were scattered, she was unable to focus at work, and she had problems controlling her mood. Id. Plaintiff had trouble interacting with others. Id. Plaintiff experienced residual effects from her thyroid cancer and she had chronic joint and muscle pain, as well as daily deep shoulder pain. Id. Plaintiff's pain worsened with climbing stairs, exercising, lifting, standing, walking, and stress. Id.

While the ALJ acknowledged that some limitations were to be expected, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible for six reasons. First, Plaintiff's subjective complaints were not "reasonably consistent" with the medical evidence. Id. at 15. Next, the ALJ discounted Plaintiff's credibility because of instances of noncompliance with treatment. Id. Third, the ALJ noted that substance abuse contributed to Plaintiff's ongoing problems. Id. at 16. Fourth, the ALJ found Plaintiff's testimony inconsistent with the fact that she had worked with the allegedly disabling impairments. Id. Fifth, the ALJ noted that "secondary gain issues may also be present." Id. Finally, the ALJ found Plaintiff's allegations inconsistent with her daily activities.

a. Consistency with the medical evidence

Although Plaintiff had thyroidectomy surgery, the objective medical evidence showed a successful recovery with no ongoing problems. E.g., Tr. 536 (Feb. 2012 note by Dr. Aliabadi-Wahle stating Plaintiff denied various residual effects of surgery and was "recuperating well"); Tr. 723 (May 2013 assessment by PMHNP Gibson noting that Plaintiff was "free of thyroid

cancer" and had completed her treatments). Accordingly, Plaintiff's subjective complaints related to thyroid cancer were not consistent with the medical evidence.

On the other hand, as to fibromyalgia, the objective evidence confirms the diagnosis and there is no inconsistency with the level of disabling symptoms alleged by Plaintiff. E.g., Tr. 543 (May 2012 note from Dr. Wernick finding that Plaintiff's symptoms likely corresponded to fibromyalgia). The ALJ notes that Dr. Wernick preferred that Plaintiff "continue to be as active as possible," and Dr. Ghetie recommended 20 minutes of light aerobic exercise every day. Tr. 15 (citing Tr. 543 and 668). However, Dr. Wernick qualified his statement by noting that he understood that Plaintiff had difficulty exercising and Dr. Ghetie wrote that Plaintiff "definitely seems to have central pain sensitization/fibromyalgia" and was "a very active person before her cancer." Tr. 543, 688 (emphasis added). Plaintiff testified that she had "good days and bad days" and that sometimes she had more energy to be active but often she was fatigued, exhausted, and "physically broken." Tr. 48-51. The Court does not see any inconsistency between the evidence and Plaintiff's testimony.

     b.   Non-compliance with treatment

The ALJ cited multiple instances of non-compliance with treatment as a basis for discounting Plaintiff's credibility. For example, while Plaintiff alleged disabling mental health symptoms, she was not committed to taking psychiatric medication and was unwilling to take a mood stabilizer. E.g., Tr. 348, 477. Plaintiff contends that the record shows that Plaintiff tried and failed many medications due to side effects. However, the record also shows that at least some medication helped stabilize Plaintiff's moods. E.g., Tr. 564 (stating in July 2012 that Plaintiff had "some positive responses" to antidepressants, mood stabilizers, and antipsychotics, but had taken herself off medication); Tr. 710 (noting in Oct. 2013 that after taking topomax

Plaintiff noticed her moods being more stable, having less pain, and having fewer headaches).

An inadequately explained failure to seek treatment or follow a prescribed course of treatment

may form the basis for an adverse credibility finding. Orn v. Astrue, 495 F.3d 625, 638 (9th Cir.

2007) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). Accordingly, the ALJ did not

err in discounting Plaintiff's credibility for this reason.

    c.  Substance abuse

    The ALJ states that substance abuse contributed to Plaintiff's ongoing problems. Tr. 16.

He cites medical records, primarily from before the alleged period of disability, to demonstrate

that Plaintiff was addicted to marijuana, methamphetamines, alcohol, and prescription pain

medication. Tr. 16. However, he does not provide any explanation as to how this alleged abuse

affects Plaintiff's credibility. To the extent that her substance abuse has affected her treatment,

the Court already found, as explained above, that the AJL properly discounted Plaintiff's

credibility because she failed to follow a prescribed course of treatment. Any further basis to

discount Plaintiff's credibility based on substance abuse is not adequately explained by the ALJ.[3]

    d.  Work

    The ALJ discounted Plaintiff's credibility because she has worked with the allegedly

disabling impairments and because the reasons Plaintiff left her prior job were inconsistent with

the reasons Plaintiff provided in testimony. Tr. 16. The ALJ stated that Plaintiff worked on-call

as a personal assistant in 2010, just prior to her alleged onset date. Id. In addition, Plaintiff

worked as a nursing assistant for approximately 12 years. Id. The ALJ stated that Plaintiff left the

---

[3] Defendant cites Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) for the proposition that drug-seeking behavior is a valid basis for a negative credibility finding. However, in Edlund, the ALJ properly concluded that the plaintiff's complaints of physical pain were not credible because he was exaggerating such complaints in order to receive prescription pain medication to feed his Valium addiction. 253 F. 3d. at 1157. The ALJ in this case makes no such finding, nor does he link Plaintiff's alleged substance abuse with drug-seeking behavior involving lying or exaggerating about disabling symptoms.

nursing job because her employer did not give her the position she had been promised and she was going through a divorce. Id. The ALJ found that these reasons were "somewhat inconsistent" with Plaintiff's testimony that she left her job because she was constantly reprimanded for attendance problems. Id.

However, Plaintiff's work history does not reflect an ability to engage in full-time, competitive work. Plaintiff's work as a personal assistant in 2010 only required her to work one to two times per week, for three hours at a time. Tr. 476. As to her 12 years as a nursing assistant, Plaintiff's work history is spotty and sporadic. She left her job at Kaiser in 2008 because she "couldn't function." Tr. 476. She reported being disciplined for excessive absenteeism due to mental health difficulties. Id. Between 2008 and 2011, Plaintiff held several short-term jobs. Tr. 208, 213-15. In 2011, she held a temporary job with more significant earnings but by 2012, she again worked very little. Id. Plaintiff's work history is not a clear and convincing reason to discount her credibility because it is consistent with her testimony that she has struggled through many jobs.

On the other hand, Plaintiff concedes that she provided inconsistent reasons for why she left work at Kaiser in 2008. Pl's. Reply 10, ECF 16. An inconsistency between the record and claimant's testimony about why she left a job can be a clear and convincing reason to reject a claimant's credibility. Sedillo v. Colvin, No. 14-15560, 2016 WL 1128040, at *2 (9th Cir. Mar. 23, 2016) (citing Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) ("testimony that the claimant left his job because he was laid off, rather than injured, was a specific, cogent reason for the ALJ to disregard the claimant's testimony")). At the hearing, Plaintiff testified that she left the Kaiser job because of attendance issues. Tr. 41. However, in a psychodiagnostic evaluation in 2012, Plaintiff stated that she left Kaiser because she did not get a job she was promised and she

was in the process of a divorce. Tr. 552. The ALJ properly discounted Plaintiff's credibility due to this inconsistency.

e.   Secondary gain

The ALJ concluded that secondary gain issues may be present in this case and that Plaintiff "could be attempting to portray more extensive limitations than are actually present in order to increase the chance of obtaining benefits." Tr. 16. In support of this conclusion, the ALJ noted that Plaintiff reported that she attended a counseling session because she was working on obtaining disability benefits. Tr. 16. The ALJ found that Plaintiff's report that she walked and attended yoga classes was inconsistent with statements that she did not have enough energy to work out or walk. Id. In addition, the ALJ cited a statement by Plaintiff that she missed work due to side effects from medication, despite the fact that the record shows that Plaintiff used medication inconsistently and, when she did, had positive responses. Id.

"'Secondary gain' means 'external and incidental advantage derived from an illness, such as rest, gifts, personal attention, release from responsibility, and disability benefits.'" Burrell v. Colvin, 775 F.3d 1133, 1140 (9th Cir. 2014) (quoting Dorland's Illustrated Medical Dictionary 721 (29th ed.)) "Secondary gain is not the same as malingering; secondary gain is an incidental advantage derived from an actual illness." Id.

While an ALJ may consider motivation and the issue of secondary gain in evaluating credibility, Plaintiff's isolated statement in counseling that she was attempting to obtain disability benefits is not substantial evidence to support a conclusion that Plaintiff was motivated by secondary gain. The very purpose of applying for Social Security benefits is the receipt of benefits. Without other evidence of exaggeration or malingering, the suggestion of secondary gain is not a legally sufficient reason to discredit Plaintiff. See, e.g., Burrell, 775 F.3d at 1140.

As to Plaintiff's statements about yoga, walking, and the side effects of medication, the inferences drawn by the ALJ are more accurately described as accusations of malingering or exaggerating, rather than secondary gain. Nevertheless, such inconsistencies between Plaintiff's testimony and evidence in the record are clear and convincing reasons to discount Plaintiff's credibility.

f.    Daily activities

The ALJ found that Plaintiff can perform a full range of daily activities that is inconsistent with the nature and severity of her subjective complaints. Tr. 16. The ALJ pointed to the following activities: using a computer, working on arts and crafts projects, gardening, being active with her children, walking, doing yoga and going in the pool, going on a "Volkswalk," planning a trip to California, shopping, caring for two teenage daughters and four parrots, boating, taking her medications, housecleaning, reading, preparing meals, watching television, and grocery shopping. Tr. 16-17. In addition, Plaintiff reported doing well with her dieting and exercise, and she appeared at one counseling session in ankle weights and exercise attire. Tr. 17.

Plaintiff argues that her daily activities are consistent with the fact that her bipolar and fibromyalgia symptoms cycle and vary with her mood. When Plaintiff is manic, she has a lot of energy and, on a good day, her fibromyalgia does not inhibit her ability to be active.

While perhaps Plaintiff's testimony is more nuanced than the ALJ portrays, the Court nevertheless finds that the ALJ's interpretation of the evidence is reasonable and supported by substantial evidence. Plaintiff testified at the administrative hearing that she wakes up "every single morning" with deep shoulder pain, hip pain, and below-the-knee pain. Tr. 48. While she did testify to having "good days," she also testified: "[M]y functioning is not functioning right now. My functioning is just barely functioning at home." Tr. 44-45. The ALJ's interpretation of

her testimony may not be the only reasonable one but, because it is still a reasonable interpretation, it is not this Court's role second-guess it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)).

      e. Credibility conclusion

      In summary, the Court affirms the ALJ's finding regarding Plaintiff's failure to comply with treatment and inconsistencies between Plaintiff's testimony and her activities of daily living. On the other hand, the Court does not affirm the ALJ's findings regarding inconsistencies between Plaintiff's testimony and the objective medical evidence. As to Plaintiff's substance abuse, work history, and motivation for secondary gain, the Court affirms part of the ALJ's findings and rejects part. Although this Court may affirm an ALJ's overall credibility conclusion when not all of the ALJ's reasons are upheld, Batson, 359 F.3d at 1197, the Court is unable to determine whether the ALJ would still have found Plaintiff not credible based only on the reasons the Court affirms. On remand, the ALJ must determine whether Plaintiff is credible. Depending on the finding, it may be necessary to reformulate Plaintiff's residual functional capacity and the disability analysis.

III.    Residual functional capacity (RFC)

      Plaintiff contends that the ALJ erred in his assessment of Plaintiff's RFC because he failed to include more restrictive limitations on Plaintiff's ability to interact appropriately with supervisors, maintain attention and concentration, perform activities within a schedule, and maintain regular attendance. Plaintiff cites various findings by Dr. Lundblad, Dr. Scharf, and Dr. Robinson. As indicated above, the ALJ on remand must reevaluate the opinions of these three physicians and provide specific and legitimate reasons to assign them a particular weight. The

other reasons Plaintiff cites, standing alone, are insufficient for this Court to conclude that the ALJ erred in crafting his RFC.

IV.     Remand for further proceedings

In social security cases, remands may be for additional proceedings or for an award of benefits. E.g., Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014) (explaining that if "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded [,]" but "in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits") (internal quotation marks omitted); Banks v. Colvin, No. 3:14-CV-01306-HZ, 2015 WL 4628031, at *6 (D. Or. Aug. 3, 2015) (explaining that remanding for additional proceedings is the ordinary and "proper course," except in rare circumstances) (quoting Treicher v. Comm'r, 775 F.3d 1090, 1101 (9th Cir. 2014)).

To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. Id. at 1020; see also Treicher, 775 F.3d at 1100 (2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Garrison, 759 F.3d at 1020. Second, the record must be fully developed and further administrative proceedings would serve no useful purpose. Id. Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. Id. To remand for an award of benefits, each part must be satisfied. Id.; see also Treicher, 775 F.3d at 1101 (when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency).

The first part of the test is met here because, as explained above, the ALJ committed several legal errors in his analysis of Plaintiff's application for benefits. The next question is whether additional administrative proceedings would be helpful. In evaluating this issue, a court considers "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." Treichler, 775 F.3d at 1103–04.

Here, additional administrative proceedings are necessary. While the ALJ failed to properly evaluate the medical opinions of Dr. Robinson, Dr. Scharf, and Dr. Lundblad, these opinions remain in conflict with other medical opinions in the record. Furthermore, Plaintiff's credibility remains in question and must be reevaluated in light of this opinion. Finally, because of the ALJ's errors regarding the medical opinions and credibility finding, the Court is unable to say whether or not the RFC accurately represents Plaintiff's abilities. In other words, Plaintiff's entitlement to benefits is far from "clear under the applicable legal rules." See id. Accordingly, a remand for additional proceedings is required to allow the ALJ to address the errors and ambiguities detailed above.

## CONCLUSION

The Commissioner's decision is reversed and remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated this ____15____ day of _____June_____, 2016

_____
MARCO A. HERNÁNDEZ
United States District Judge